IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

RED DOG MOBILE SHELTERS, LLC   §
                               §
            Plaintiff,         §
v.                             §        CIVIL ACTION NO.
                               §        3:13-CV-3756-K
KAT INDUSTRIES, INC. and KAT   §
MACHINE, INC.,                 §
                               §
            Defendants.        §

## *MARKMAN* MEMORANDUM OPINION AND ORDER

Before the Court are the parties' briefs on the issue of claim construction of the patent-in-suit, U.S. Patent Number 8,534,001 ("the '001 Patent"). The Court has reviewed the parties' briefs and all related filings and evidence, including the patent-in-suit, the specification, the patent prosecution history to the extent it was submitted by the parties, as well as the parties' proposed claim constructions. The Court hereby construes the disputed claims according to *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 360 (1996).

I.   **Background**

     A.   **Procedural**

Plaintiff, Red Dog Mobile Shelters, LLC ("Red Dog") initiated the current action by filing *Plaintiff's Complaint*. In the *Plaintiff's Complaint*, it is alleged, among other things, that Defendants, KAT Industries, Inc. and KAT Machine, Inc. (collectively

"KAT") infringed upon a patent assigned to Red Dog. Since the parties dispute the meaning of the claim language of the patent in suit, it is necessary for the Court to construe the disputed claim terms of the patent.

### B.   The Patent in Suit: The '001 Patent

The '001 patent, entitled "Re-Deployable Mobile Above Ground Shelter" was issued by the USPTO on November 17, 2013. It was assigned to Red Dog, who is the sole owner of the entire right, title, and interest in the '001 patent.

The patent discloses the invention of a protective shelter with unique features. Some of the features include the ability to transport and relocate the storm shelters easily and the use of the Bernoulli effect to help keep the shelters in place during a storm. The Bernoulli effect is an air pressure effect that occurs when air flows over a surface. Simply put, when air flows over a surface in a certain way, air pressure drops, which could make it easier for a shelter to be blown away. The disclosed invention includes venting in certain locations to take advantage of this effect. The venting runs from the top of the shelter to underneath the shelter. This makes air move from underneath the shelter to above the shelter, through the vents. Which in turns creates a vacuum under the shelter, which helps keep it in place.

Even though the specification describes the shelter as being mobile, above ground, and as taking advantage of this Bernoulli effect the claims do not strictly require the claimed invention to have these features.

## II.   Applicable Law

### A.      Principles of Claim Construction

Claim construction is a matter of law. *See Markman*, 52 F.3d at 979. The Federal

Circuit Court has held that "the claims of a patent define the invention to which the

patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312

(Fed. Cir. 2005). The Supreme Court has stated that the claims are "of primary

importance, in the effort to ascertain precisely what it is that is patented." *Phillips*, 415

F.3d at 1312. A court looks to three primary sources when determining the meaning of

claims: (1) the claims, (2) the specification, and (3) the prosecution history. *Markman*,

52 F.3d at 979. The claims of the patent must be read in view of the specification of

which they are a part.  *Id.* The specification consists of a written description of the

invention which allows a person of ordinary skill in the art to make and use the

invention. *Id.* This description may act as a dictionary explaining the invention and

defining terms used in the claims. *Id.*  Although a court should generally give such

terms their ordinary meaning, a patentee may choose to be his own lexicographer and

use terms in a manner other than their ordinary meaning, so long as the special

definition of the term is clearly stated in the patent specification or file history. *See*

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

The court starts with the claim itself, read in light of the specification. *See Vivid*

*Technologies, Inc. v. American Sci. & Eng'g, Inc.*, 200 F.3d 795, 804 (Fed. Cir. 1999).

While the claims themselves provide significant guidance as to the meaning of a claim

term, the specification is generally dispositive as "it is the single best guide to the

meaning of a disputed term." *Phillips*, 415 F.3d at 1314-1315. In addition to the claim language and specification, the prosecution history is often helpful in understanding the intended meaning, as well as the scope of technical terms in the claims. *See Vivid*, 200 F.3d at 804. In particular, the prosecution history is relevant in determining whether the patentee intends the language of the patent to be understood in its ordinary meaning. Using these tools, the court construes only the claims that are in controversy and only to the extent necessary to resolve the dispute. *Vivid*, 200 F.3d at 803.

The words of a claim are usually given their ordinary and customary meaning. *See Phillips*, 415 F.3d at 1312. Ordinary and customary meaning is the meaning the claim term would have to a person of ordinary skill in the art (e.g., field of the invention). *See Id.* at 1313; *Markman*, 52 F.3d at 979. A person of ordinary skill in the art would read the claim term in the context of the entire patent, including the specification, not just the particular claim where the term appears. *Phillips*, 415 F.3d at 1313. There are instances where the ordinary meaning of claim language, as a person of skill in the art would understand it, "may be readily apparent even to lay judges," thereby requiring "little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314. In these situations, general purpose dictionaries are useful. *Id.*

But, in many cases, the court must determine the ordinary and customary meaning of the claim terms which have a certain meaning in a field of art. *Id.* The court

can look to "those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean." *Id.* These sources can include "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of the technical terms, and the state of the art." *Id.*

Aside from the written description and the prosecution history, the claims themselves also offer assistance as to the meaning of certain claim terms. *Id.*

When the intrinsic evidence, that is the patent specification and prosecution history, unambiguously describes the scope of a patented invention, reliance on extrinsic evidence, which is everything outside the specification and prosecution history, is improper. *See Vitronics*, 90 F.3d at 1583. While the Court may consult extrinsic evidence to educate itself about the invention and relevant technology, it may not rely upon extrinsic evidence to reach a claim construction that is clearly at odds with a construction mandated by the intrinsic evidence. *See Key Pharm. v. Hercon Lab. Corp.*, 161 F.3d 709, 716 (Fed. Cir. 1998).

## III.   Construction of the Patent Claims and Terms

### A.   The Disputed Claim Phrases

The parties dispute the meaning of certain phrases used in the claim language of the patent in suit. The parties disagree to as to the meaning of the following phrases:

- "protective shelter," which occurs in Independent Claims 44, 60, 89, and 94 of the '001 Patent. The phrase also occurs in many dependant claims of the '001

Patent.

- "multiple rails that extend along the first axis, are coupled to the enclosure, and support the protective shelter on a substrate," which occurs in Claim 44 of the '001 Patent;

- "first and second deck sections coupled to the rails," which occurs in Claim 44 of the '001 Patent;

- "ballast disposed in one or more locations in the protective shelter, including at least one location in a set including beneath the floor, in the first deck section, and in the second deck section," which occurs in Claims 44, 89, and 94 of the '001 Patent;

- "multiple rails that elevate the floor above a substrate," which occurs in Claim 60 of the '001 Patent;

- "multiple elongate members extending along the first axis that are coupled to the enclosure and support the protective shelter on a substrate," which occurs in Claims 89 and 94 of the '001 patent;

- "at least one location in a set/at least one of a set," which occurs in Claims 44, 60, 89, and 94 of the '001 Patent;

- "including at least one location in a set including beneath the floor," which occurs in Claims 44, 89, and 94 of the '001 Patent.

- "wherein the ballast is disposed in both the first deck section and the second deck section," which occurs in Claim 91 of the '001 Patent; and

- "the first and second deck sections are disposed at the first and second ends of the structure," which occurs in Claim 45 of the '001 Patent.

The full language of all of the '001 Patent claims are in the record before the Court and the Court has fully reviewed all the claims of the patent, including those containing the disputed phrases. The Court finds no need to repeat the full language of those claims in this order.

### B.      Construction of Disputed Claim Phrases

### 1.      "protective shelter"

The parties dispute the meaning of the phrase "protective shelter" as it is used in the claims of the '001 Patent. Red Dog asserts that this phrase does not need construction and in the alternative it should be construed to mean "a structure intended to shield its occupants from exposure, injury, or damage." KAT asserts that the phrase should be construed to mean "mobile above ground shelter intended to protect people from storms and wind-related injury."

In support of its proposed construction, KAT argues that the phrase should be construed so that a protective shelter is both mobile and has the purpose of protecting people from storms and wind events because the title and abstract describe the protective shelter in this manner. Red Dog asserts that no construction is necessary because the phrase is readily understandable and, in the alternative, if construction is necessary Red Dog's proposed construction should be adopted because KAT's proposed construction improperly imports specification limitations into the claim language.

The Court agrees with Red Dog that no construction of this phrase is needed and that adoption of KAT's proposed construction would improperly limit the claim language. The Court first notes that the disputed phrase occurs in the preamble of the claims. Since this language occurs in the preamble, the language is not limiting unless the preamble recites essential structure that is important to the invention or necessary to give meaning to the claim. *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 952 (Fed. Cir. 2006), *cert denied* 546 U.S. 1157 (2006). A preamble may be limiting when it describes a necessary component of the claimed invention that the body of the claim relies upon and derives an antecedent basis from. *Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1339 (Fed. Cir. 2003).

In the claim language before the Court, the bodies of the claims fully set out the claimed invention and they do not derive any antecedent basis from the preamble language that requires construction of the preamble. For example, Claim 44 of the '001 Patent recites as follows:

> "A protective shelter, comprising:
> an enclosure having at least a floor, at least one sidewall coupled to the
>     floor, a door, and a roof coupled to the at least one sidewall, wherein
>     the protective shelter has a first axis and an orthogonal second axis
>     both parallel to a plane including the floor of the enclosure, and
>     wherein the protective shelter has a greater first dimension along the
>     first axis and a lesser second dimension along the second axis;
> multiple rails that extend along the first axis, are coupled to the enclosure,
>     and support the protective shelter on a substrate;
> first and second deck sections coupled to the rails, wherein the first and
>     second deck sections extend substantially symmetrically from the

enclosure along the first axis; and

a ballast disposed in one or more locations in the protective shelter, including at least one location in a set including beneath the floor, in the first deck section, and in the second deck section." '001 Patent at 21:7-27.

The body of the claim language, fully sets out all of the limitations necessary for the protective shelter referred to in the preamble of the claim. And, the body of the claim does not rely on the preamble language in a manner that supports construction of the preamble language. The body of the claim refers to the "protective shelter" of the preamble, but only to describe how the claim body limitations set out and define a protective shelter. This is not a situation in which the preamble describes a necessary component of the invention, nor is it a situation where the body of the claim language derives an antecedent basis from the preamble to support limiting the preamble language.

In addition, KAT fails to point out how its proposed construction recites essential structure that is important to the invention or necessary to give meaning to the claim. KAT asserts that the phrase should be construed as, "mobile above ground shelter intended to protect people from storms and wind-related injury." This construction would require the shelter to be both mobile and above ground. KAT's only argument to include these limitations are general statements that the title and specification refer to the invention as being mobile and above ground. This alone is insufficient to import these limitations into the claim language, especially into the

preamble of the claims. For these reasons, the Court declines to adopt KAT's proposed construction of the phrase.

The Court also agrees with Red Dog that there is no need to construe the phrase beyond its plain and ordinary meaning. In addition to the fact just addressed, that there is no basis to limit the preamble language, the terms of the phrase are used with their usual and customary meanings. Applying the usual and customary meanings a "protective shelter" is a shelter that is designed to protect. This is exactly what the patent specification describes and is the meaning of the phrase as it is used in claims. For these reasons, the Court holds that it is not necessary to construe the phrase "protective shelter." So, the phrase shall be given it plain and ordinary meaning.

2.      **"multiple rails that extend along the first axis, are coupled to the enclosure, and support the protective shelter on a substrate"**

The parties dispute the meaning of the phrase "multiple rails that extend along the first axis, are coupled to the enclosure, and support the protective shelter on a substrate," which occurs in Claim 44 of the '001 Patent. Red Dog asserts that this phrase does not need construction and in the alternative should be construed to mean "at least two straight structural members that each spread out from a central point, but not necessarily the same central point, and are in the same general plane each of which bear part of the weight of the protective shelter on a surface upon which the shelter can be placed." KAT asserts that the phrase should be construed to mean "at least two rails that run parallel to the longer axis, are attached to the enclosed room, elevate the floor,

and support the mobile above ground shelter on a substrate."

The dispute over this phrase can be broken down into three parts. First, a dispute over the meaning of "multiple rails that extend along the first axis." Second, a dispute over the meaning of "coupled to the enclosure." And finally, a dispute over the meaning of "support the protective shelter on a substrate."

Regarding the first part of this phrase, "multiple rails that extend along the first axis," Red Dog proposes that this should be construed as "at least two straight structural members that each spread out from a central point, but not necessarily the same central point, and are in the same general plane." KAT asserts that this portion of the phrase should be construed as "at least two rails that run parallel to the longer axis."

Based on the proposed constructions, there does not appear to be any dispute of the meaning of "multiple rails." The parties both assert that "multiple" means that there is more than one. And, while Red Dog calls that rails "straight structural member" and KAT simply repeats that word "rails," neither party presents any substantial argument over how there is a difference between these two options.

The real dispute appears to be over the orientation requirements of these rails and the meaning of "extend along the first axis." Red Dog proposes that this means that the rails extend from a central point, but not necessarily the same central point and are in the same general plane. But, Red Dog does little to explain how its construction clarifies the phrase's meaning. Neither does it explain the meaning or purpose of adding a "central point" that the rail extends along or how this central point corresponds to

extending along an axis.

KAT asserts that this portion of the disputed phrase should be construed to require that the rails be parallel to the longer axis. In support of this, KAT points to the various figures of the patent that indicate that the rails are parallel to the longer axis of the protective shelter. KAT appears to take this to indicate that rails that extend along an axis must necessarily be parallel to that axis.

The Court disagrees with both proposed constructions. The Court first notes, that Red Dog's proposed construction does little to help clarify the meaning of the phrase and, as just noted, the proposed construction adds more questions than it clarifies. As to Red Dog's proposed construction, the Court notes that the patent specification, uses the word "parallel" to describe many structural members of the disclosed embodiments of the invention. Based on this usage, it is clear that the inventor knew the meaning of parallel and if the inventor wanted the rails of the claim to be parallel to the longer axis, the inventor could have simple stated this in the claims. Instead, the inventor chose for the rails to extend along the first axis. Given that the he knew what parallel meant, could have drafted a claim to require the rails to be parallel, and chose to instead require that the rails extend along the central axis, the inventor must have meant something other than parallel when he claimed "extend along the first axis."

The Court also notes that it is possible for something to extend along an axis without being perfectly parallel to that axis. As an example, take two lines that form an

x shape centered inside a rectangle, such that the lines that form the x shape travel the length of the rectangle and therefore cross the smaller sides of the rectangle. In this situation, the lines are not parallel to each other and they are not parallel to the length of the rectangle. But, the lines extend along the length of the rectangle because they cross the rectangle at its shorter ends. In this case, the lines could be said to extend along the length of the rectangle. In this example, the length of the rectangle would correspond to the longer axis of the claims. As another example, take the same rectangle with two lines that form an x centered in the middle of the rectangle, but this time instead of crossing the rectangle on its shorter sides, the lines cross through on the longer sides of the rectangle. In this case, the lines could not be said to extend along the length of the rectangle. Instead, they extend across the rectangle, which in terms of the claim language would be the shorter axis.

The Court is of the opinion that neither parties' proposed construction correctly captures the meaning of "extends along" and actually clarifies the phrase. For this reason, the Court refuses to adopt either proposed construction for this portion of the disputed phrase.

The Court is of the opinion that this portion of the disputed phrase, "multiple rails that extend along the first axis" should be construed as "multiple rails that run along the first axis of the protective shelter, but are not necessarily parallel to the first axis of the protective shelter," which incorporates the ideas expressed above.

The second portion of this disputed phrase is "coupled to the enclosure." Red

Dog's proposed construction does not directly address this portion of the disputed phrase. Its proposed construction does not specify what the rails are coupled to. KAT proposes that this portion of the phrase should mean "are attached to the enclosed room."

Based on KAT's briefing, there appears to be some indication that there is a disagreement over the meaning of "enclosure." With Red Dog claiming that the protective shelter is the same as the enclosure and KAT claiming that the enclosure is just one part of the protective shelter. To the extent that the parties dispute this, the Court is of the opinion that the enclosure is one part of the protective shelter and not the protective shelter itself.

This is supported by the claim language. The protective shelter is recited in the preamble of the claims. But, the enclosure is specifically listed as a discreet claim limitation in the body of the claim along with other various claim limitations. In addition, other portions of the claim specifically make reference to the "enclosure" and to the "protective shelter" in a manner that shows that the two are distinct from each other. For these reasons, to the extent that the parties dispute this issue, the Court holds that the "enclosure" of the claim bodies is a distinct limitation and one component of the protective shelter.

KAT also proposes that "enclosure" be construed as "enclosed room" in this phrase. KAT argues that this is a correct construction because the claims define the enclosure as having a floor, at least one wall, a door, and a roof and that under the plain

meaning of the word is "enclosed room." But, KAT does not provide any explanation as to how construing "enclosure" provides any clarity to the meaning of the claim term or that there is anything ambiguous about the claim term that makes construction necessary. Given that the proposed construction does not add clarity and a lay juror would understand what an enclosure is the Court is of the opinion that the term need not be construed.

Given that, this portion of the dispute claim clearly reads that the rails are coupled to the enclosure; the enclosure is clearly indicated as being one limitation of the protective shelter; and there is no ambiguity as to the meaning of enclosure there is little need for the Court to further explain this limitation. The terms are used in their plain and ordinary meaning. For these reasons, the Court declines to construe this portion of the disputed phrase.

The final portion of this disputed phrase is "support the protective shelter on a substrate." Red Dog proposes that this portion of the disputed phrase does not need to be construed and in the alternative that this means "bear part of the weight of the protective shelter on a surface upon which the shelter can be placed." KAT proposes that this portion of the phrase should be construed as "support the mobile above ground shelter on a substrate."

The Court initially notes that KAT's proposed construction calls the "protective shelter" a "mobile above ground shelter." This is consistent with KAT's assertion that the "protective shelter" of the preamble should be construed and with KAT's proposed

construction of that phrase. But, the Court has already addressed this construction and declined to adopt KAT's proposed construction. For this reason, the Court will treat the proposed construction of this portion of the disputed phrase as if KAT had simply restated "protective shelter," instead of including "above ground mobile shelter."

There is no real dispute as to the literal meaning of this portion of the disputed phrase. Instead, KAT argues that this portion of the phrase should not be given its literal meaning because Red Dog is barred from asserting this meaning based on the prosecution history of the '001 Patent. KAT's assertions is based on statements made during prosecution of the '001 Patent by the inventor. At one point in the prosecution of the patent, the examiner stated that certain dependant claims were objected to because the independent claim upon which they were based was rejected. But, the examiner went on to state that if the objected to dependent claims were rewritten in independent form, they would be allowable. The inventor responded by rewriting the objected to dependent claims and presenting them to the examiner in independent form. But, the claims did not identically adopt all of the limitations of the dependent claims. In some cases, the claims appear to have been changed substantially. KAT argues that the inventor, at the time the claims were changed, represented to the examiner that the claims were the same as the objected to dependent claims, but were purely rewritten in independent form. KAT argues that this statement to the examiner requires that the claims be given the limitations and meanings that were present in the objected to dependent claims. Regarding the presently disputed portion of the claims,

the prior objected to dependent claim not only required the rails to support the enclosure, but also required the rails to support the enclosure above the substrate, i.e. so that there is a space between the substrate and the bottom of the enclosure.

The Court disagrees with KAT's assertion that the claims of the issued patent should be construed to have the meaning of the objected to dependent versions of the claims that were presented during patent prosecution. As pointed out by Red Dog, the statement made by the inventor during prosecution does not state that the each and every limitation of the objected to dependent claims was incorporated verbatim into the newly presented independent claims. Instead, what the inventor stated was, "Claim 69 has been rewritten in independent form and now includes the features formerly recited in allowable Claim 79, which is cancelled herein." Appx. Pla. Resp. to Def. Claim Const. Brief at 18. This does not support KAT's interpretation of the file history or of the claim constructions to be applied because there is a significant difference between stating that all limitations are the same and stating that the new claim includes the features formerly recited in a previous claim. The statement that was made by the inventor cannot be said to have asserted that all limitations present in the previous claims were included in the new claims.

Also, once the newly revised independent claims were presented for examination, the Court can only assume that the examiner actually read the claims and that the examiner read the statement made by the inventors before the claims were allowed to issue in the patent. If the examiner read both of these and thought that the

new claims were supposed to include each limitation of the dependent claims and that they did not in fact do so, then the examiner would have rejected or objected to the claims. This did not happen. Instead the examiner allowed the claims. The difference between the objected to dependent claims and the newly presented independent claims is significant enough that a prudent examiner could not have been mislead by the statement made by the inventors. For these reasons, the Court refuses to adopt KAT's proposed construction based on the prosecution history.

In summary, because neither proposed construction correctly captures the meaning of extend along an axis; the "protective shelter" of the preamble of the claims is different than the "enclosure" limitation of the claims; there is no need to further construe "coupled to the enclosure," and the prosecution history does not support applying a meaning other than the non-literal meaning of "support the protective shelter on a substrate," the Court construes the phrase "multiple rails that extend along the first axis, are coupled to the enclosure, and support the protective shelter on a substrate" as "multiple rails that run along the first axis of the protective shelter, but are not necessarily parallel to the first axis of the protective shelter, are coupled to the enclosure, and support the protective shelter on a substrate."

### 3. "first and second deck sections coupled to the rails"

The parties dispute the meaning of the phrases "first and second deck sections coupled to the rails," which occurs in Claim 44 of the '001 Patent. Red Dog asserts that no construction of this phrase is required and in the alternative the phrase should be

construed as "first and second roofless, platform like structures that are connected to the rails." KAT asserts that the phrase should be construed as "first and second decks supported by the rails."

In support of its construction, KAT asserts that the "deck sections" of the claim should be read simply as "decks" because the patent specification does not refer to any "deck sections" of the invention. Instead, the specification refers to the "decks" of the invention. KAT asserts that the lack of the use of the phrase "deck sections" in the specification indicates that the inventor was referring to the decks of the invention and that the claim should be construed accordingly.

KAT, in its proposed construction, also changes the claim language from requiring that the deck sections be coupled to the rails to requiring that the deck sections be supported by the rails. In support of this argument, KAT directs the court's attention to various figures of the patent, which it asserts indicate that the rails are located underneath the protective shelter and therefore support the apparatus from beneath. For this reason, KAT asserts that the proposed construction more accurately reflects the meaning of the phrase.

The Court disagrees with KAT on both issues. An inventor is free to choose the words of the claim language, even if those words are not used in the specification of a patent. And the claims of a patent, not the specification, are what defines what the inventor seeks to protect. Without ambiguity in the claim language or the clear indication in the specification that an inventor intended claim language to have a

specific meaning beyond its plain and ordinary meaning, the claim language will be given its plain and ordinary meaning. In this case, the claim language is not ambiguous and there is no indication that the inventor intended the "deck sections" of the claims to be synonymous with the "decks" described in the specification. Likewise, the inventor chose language that merely requires the deck sections to be coupled to the rails instead of requiring the deck sections to be supported by the rails. The figures indicated by KAT might show that the rails extend underneath the deck in the described embodiments, but this is not sufficient to require that the rails support the decks in the claims.

In addition, other claim language supports this interpretation because the claim already indicates what the rails support. As discussed in the construction of the previous disputed phrase, the claim clearly indicates that it is the protective shelter that is supported by the rails. Adopting KAT's construction that requires that the rails to support the deck section would, at best, be unnecessary because it is duplicative of other claim language, but doing so could also introduce ambiguity and uncertainty into the claim language.

For this reason there is no need to construe the phrase beyond its plain and ordinary meaning. So, the court holds that the phrase "the first and second deck sections coupled to the rails" shall be given plain and ordinary meaning.

**4.    "a ballast disposed in one or more locations in the protective shelter, including at least one location in a set including beneath the floor, in the**

**first deck section, and in the second deck section"**

The parties dispute the meanings of "a ballast disposed in one or more locations in the protective shelter, including at least one location in a set including beneath the floor, in the first deck section, and in the second deck section," which occurs in Claims 44, 89, and 94 of the '001 Patent. Red Dog proposes that the phrase does not require construction or in the alternative should be construed as "a ballast placed in one or more locations in a protective shelter including at least one location in a set including beneath the floor, in the first deck section, and in the second deck section." KAT proposes that the phrase should be construed as "a ballast at one or more locations in a protective shelter including at least one location beneath at least one in a set including the floor, the first deck and the second deck."

There is no dispute as to the literal meaning of this phrase. Instead, KAT again argues that this phrase should not be given its literal meaning based on the prosecution history of the patent. For this construction, KAT asserts the same prosecution history argument that it asserted in the construction of "support the protective shelter on a substrate," discussed above. That is, that the inventor misled the patent examiner when he revised objected to dependant claims into independent claims after the examiner's statement that the objected dependent claims would be accepted if written in independent form and that at the time of submission of the rewritten independent claims, the inventor misled the examiner by stating that the limitations of the objected to dependent claims were included in the newly rewritten independent claims. The

Court rejects this argument for the same reason that it rejected the argument in the construction of "support the protective shelter on a substrate."

The statement relied on my KAT does not unambiguously state that the exact limitations of the objected to dependent claims were incorporated into the newly presented independent claims; the examiner is presumed to have read both the new claims and the statement regarding the new claims; a prudent examiner would be aware of the differences in the newly presented independent claims; and the examiner would have properly rejected or objected to the newly presented independent claims if the examiner understood the inventor's statement to mean that the claims had identical limitations.

For these reasons, the Court holds that the phrase "a ballast disposed in one or more location in the protective shelter, including at least one location in a set including beneath the floor, in the first deck section, and in the second deck section" shall be given its plain and ordinary meaning.

### 5.      "Multiple rails that elevate the floor above a substrate"

The parties dispute the meaning of the phrase "multiple rails that elevate the floor above a substrate" as used Claim 60 of the '001 Patent. Red Dog asserts that no construction of this phrase is required or in the alternative the phrase should be construed as, "at least two rails that lift the inside surface of the enclosure upon which people can stand above the object upon which the protective shelter rest." KAT asserts that the phrase should be construed as, "at least two rails that elevate the floor of the

enclosure above the substrate."

Red Dog argues that the phrase does not need to be construed because the phrase does not present any technical terms and is easily understood. Red Dog also proposes a construction of the phrase in the alternative. This proposed construction appears to attempt to define the meaning of "floor" as used in the phrase. According to this proposed definition, the floor is the inside surface of the enclosure of the enclosure upon which people stand above the object upon which the shelter rests. Red Dog proposes this alternative construction with no explanation as to how this will clarify the meaning of the disputed phrase.

KAT's proposed construction does not attempt to define "floor." Instead it addresses the distinction between the enclosure of the invention and the protective shelter. KAT argues that its construction clarifies that the floor is the floor of the enclosure, not of the protective shelter. In addition, KAT responds that Red Dog's proposed alternative construction does not make sense because it defines the floor as being just a surface, i.e. a plane in space, instead of defining the floor as something that has structure.

The Court agrees with Red Dog that construction of this disputed phrase is not necessary. The Court first notes that the phrase does not use technical terms and does not present any ambiguities. As such, the phrase would be easily understood by a lay person. Regarding Red Dog's proposed construction, the Court does not see how this construction clarifies the meaning of the phrase. The construction takes the simple

word "floor," and turns it into a lengthy phrase that does not clarify the meaning of the word and adds uncertainty and confusion into the meaning of the phrase. In regards to KAT's proposed construction, the Court finds that it is unnecessary to further specify that the floor is the floor of the enclosure. Other claim language already clearly indicates that the floor is part of the enclosure. The claim reads, in pertinent part, as follows: "an enclosure having at least a floor, at least one sidewall coupled to the floor, a door, and a roof ..." '001 Patent at 22:59. This makes clear that the floor is a one of the structures that forms the enclosure of the claim. So, there is no need to repeat this in the construction of this disputed phrase.

Since the phrase is clear, unambiguous, and does not use technical terms; Red Dog's propose alternative construction does not clarify that meaning of the phrase; and KAT's proposed construction adds unnecessary language the Court holds that the disputed phrase "multiple rails that elevate the floor above a substrate" shall be given its plain and ordinary meaning.

**6. "multiple elongate members extending along the first axis that are coupled to the enclosure and support the protective shelter on a substrate"**

The parties dispute the meaning of the phrase "multiple elongate members extending along the first axis that are coupled to the enclosure and support the protective shelter on a substrate," which occurs in Claims 89 and 94 of the '001 Patent. This phrase is almost identical to the previously construed disputed phrase "multiple rails that extend along the first axis, are coupled to the enclosure, and support the

protective shelter on a substrate." The difference being that in this phrase it is "elongate members" that extend along an axis and in the previously construed phrase "rails" extend along an axis.

Red Dog asserts that no construction of this phrase is needed and in the alternative proposes that the phrase be construed as "at least two structural members that are characterized by being long in relation to their width which each spread out from a central point, but not necessarily the same central point and are in the same general plane, each of which are attached to the enclosure and each of which bear part of the weight of the protective shelter on a surface upon which the shelter can be placed." KAT proposes that the phrase be construed as "at least two elongate members that run parallel to the longer axis, are attached to the enclosed room, elevate the floor, and support the protective shelter on a substrate."

These proposed constructions and their supporting arguments parallel those presented in the construction of the phrase involving rails, discussed above. The Court construed that phrase to mean "multiple rails that run along the first axis of the protective shelter, but are not necessarily parallel to the first axis of the protective shelter, are coupled to the enclosure, and support the protective shelter on a substrate." because neither parties' proposed construction correctly described what "run along the first axis" means and no construction was needed for the other portions of the disputed phrase.

Given the similarity between the phrases, the parties' proposed constructions,

and the parties' arguments supporting those constructions, the Court construes this disputed phrase in the same manner and for the same reasons. So, the Court construes the phrase "multiple elongate members extending along the first axis that are coupled to the enclosure and support the protective shelter on a substrate" to mean "multiple elongate members that run along the first axis of the protective shelter, but are not necessarily parallel to the first axis of the protective shelter, are coupled to the enclosure, and support the protective shelter on a substrate."

7. **"at least one location in a set/at least one of a set"**

The parties dispute the meaning of the phrases "at least one location in a set" and "at least one of a set," the first phrase occurs in Claims 44, 89, and 94 of the '001 Patent and the second phrase occurs in Claim 60 of the '001 Patent. Red Dog proposes that no construction of the phrase is needed and in the alternative that the phrase should be construed as "including at least one of the listed locations." KAT proposes that the phrase be construed as "including at least one of the listed locations or items in a set."

The proposed constructions are identical except for the last portion of KAT's proposed construction. This last portion of KAT's construction adds onto Red Dog's construction that the something on the list could be an "item in a set." KAT argues that addition of this last portion of the construction is needed because the phrase "at least one in a set" is not specific as to whether the list that follows refers to locations or some items made part of the protective shelter.

The Court agrees with Red Dog that no construction of these phrases is

necessary. In addition, the parties' proposed constructions are not helpful because they do little to clarify the meaning of the phrases. The first phrase, which is used in Claims 44, 89 and 94, refers to at least one location in a set and then lists out the possible locations that are in that set. For example, Claim 89 reads, "... a ballast disposed in one or more locations in the protective shelter, including at least one location in a set including beneath the floor, in the first deck section, and in the second deck section ..." '001 Patent at 24:57-60. The second phrase, which is used in Claim 60, simply refers to a set. For example, Claim 60 reads, "... a ballast disposed beneath at least one of a set including the floor, the first deck and the second deck ..." '001 Patent at 23:4-6. It is clear from the claim language, in both phrases, what items are included in the possible sets. While, one phrase specifies that the items in the set are locations and the other does not specifically specify that the items in the set are locations, this makes little difference in the need to construe the phrases.

In the first phrase given as an example above, the locations in the set are beneath the floor, in the first deck section, and in the second deck section. There is no ambiguity or uncertainty about the locations in the set. So, there is no need to construe this phrase. The second phrase does not specify that the items in the set are a location. Instead it simply states that the ballast is disposed beneath either the floor, the first deck, or the second deck. This phrase is also clear in its meaning and does not present any ambiguities that need clarification. The phrases as written are clearly understandable.

KAT's argument that it is unclear if the set refers to locations or some items made part of the protective shelter is not convincing. KAT does not present any argument as to why a distinction between locations and other items made part of the protective shelter helps clarify this phrase. KAT also fails to clarify what the difference would be between "locations" and "other items made part of the protective shelter." As long as the phrase is clear as to what is in the set, then there is no need to specify if these are locations or other items made part of the protective shelter.

Since the phrases do not present any ambiguity and the parties' proposed constructions do not clarify the meaning of the phrases, the Court refuses to construe the phrases beyond their plain and ordinary meaning. The Court holds the phrases "at least one location in a set" and "at least one of a set" shall be given their plain and ordinary meaning.

### 8. "including at least one location in a set including beneath the floor"

The parties dispute the meaning of the phrase "including at least one location in a set including beneath the floor," which occurs in Claims 44, 89, and 94 of the '001 Patent. Red Dog proposes that the phrase does not need construction and in the alternative, the phrase should be construed to mean "including at least one of the listed locations. The listed locations include an option of beneath the floor." KAT proposes that the phrase be construed to mean "including beneath at least one of the listed locations or items in a set including beneath the floor. KAT proposes that the word "beneath" should be moved so that it not only modifies the floor, but so that it also

modifies the other locations in the set.

There is no dispute as to the literal meaning of this phrase. Instead, KAT again argues that this phrase should not be given its literal meaning based on the prosecution history of the patent. For this construction, KAT asserts the same prosecution history argument that it asserted in the construction of "support the protective shelter on a substrate," discussed above. That is, that the inventor misled the patent examiner when he revised objected to dependant claims into independent claims after the examiner's statement that the objected dependent claims would be accepted if written in independent form and that at the time of submission of the rewritten independent claims, the inventor misled the examiner by stating that the limitations of the objected to dependent claims were included in the newly rewritten independent claims. The Court rejects this argument for the same reason that it rejected the argument in the construction of "support the protective shelter on a substrate."

The statement relied on my KAT does not unambiguously state that the exact limitations of the objected to dependent claims were incorporated into the newly presented independent claims; the examiner is presumed to have read both the new claims and the statement regarding the new claims; a prudent examiner would be aware of the differences in the newly presented independent claims; and the examiner would have properly rejected or objected to the newly presented independent claims if the examiner understood the inventor's statement to mean that the claims had identical limitations.

For these reasons, the Court rejects KAT's proposed construction and holds that the phrase "including at least one location in a set including beneath the floor" shall be given it plain and ordinary meaning.

### 9. "wherein the ballast is disposed in both the first deck section and the second deck section"

The parties dispute the meaning of the phrase, "wherein the ballast is disposed in both the first deck section and the second deck section," which is found in Claim 91 of the '001 Patent. Red Dog proposes that the phrase does not need construction and in the alternative, the phrase should be construed as "wherein the ballast is placed in both of the roofless, platform like structure." KAT proposes that the phrase should be construed as "the ballast is located beneath both the first deck and the second deck."

The dispute over the meaning of this phrase revolves around the meaning of "deck section" and is identical to the dispute about the meaning of "deck sections" presented in the construction of "first and second deck sections coupled to the rails," discussed above. KAT argues that the phrase "deck section" should be change to simply read "deck" because the patent specification does not use the phrase "deck section" and it only refers to the "deck" of the invention. The Court rejected this argument in the construction of "first and second deck sections coupled to the rails" because an inventor is free to choose the words of the claims, even if those words do not appear in the specification of the patent, and absent ambiguity or a clear intent to redefine the words of the claims, there is no need to construe the words of the claims. That is the same case

presented here. The phrase "deck section" is not ambiguous and there is no indication that the inventor intended this phrase to be synonymous with the "deck" of the specification. For these reasons, there is no need to construe this phrase beyond its plain and ordinary meaning. The Court holds that the phrase "wherein the ballast is disposed in both the first deck section and the second deck section" shall be given its plain and ordinary meaning.

**10. "the first and second deck sections are disposed at the first and second ends of the structure"**

The parties dispute the meaning of "the first and second deck sections are disposed at the first and second ends of the structure" as used in Claim 45 of the '001 Patent. Red Dog proposes that no construction is needed and in the alternative that the phrase should be construed as "first and second decks placed at opposite ends of the enclosure." KAT proposes that the phrase be construed as "first and second decks located at opposite ends of the enclosure." So, the only difference between the two proposed constructions is whether the decks are "placed" or "located" at the opposite ends of the enclosure. In briefing, KAT states that its sees no significant difference between the two meaning of these two words and that they do not object to using Red Dog's term "placed" in the construction. So, the Court adopts Red Dog's proposed construction of this phrase, except the Court is of the opinion that for the sake of clarity and consistency, "deck sections" of this phrase shall not be construed as "deck." As discussed in the constructions of "first and second deck sections coupled to the rails,"

there is no support to in the patent to change the claim language "deck sections" to "decks." This is consistent the constructions of other disputed phrases. So, the Court construes "the first and second deck sections are disposed at the first and second ends of the structure" as "first and second deck sections are placed at opposite ends of the enclosure."

## IV. Agreed Terms/Phrases

The Court notes that the parties have submitted to the Court certain terms in which the parties assert construction is necessary, but that the parties agree to the construction of those terms and phrases. The Court hereby approves and adopts the agreed constructions of the parties.

## V. Means Plus Function

The Court notes that in its claim construction briefing that Red Dog states that KAT has taken the position that many of the disputed phrases are subject to 35. U.S.C. §112(6) and that Red Dog asserts that they are not. KAT does not present this assertion in its claim construction briefing. The Court holds that none of the disputed phrases are subject to 35. U.S.C. §112(6).

**SO ORDERED.**

Signed April 24th, 2015.

_Ed Kinkeade_

ED KINKEADE
UNITED STATES DISTRICT JUDGE

**SUMMARY CHART OF CLAIM CONSTRUCTIONS OF DISPUTED TERMS**

## Disputed Terms of the '001 Patent

| Language of Disputed Priority Term of Claims | Red Dog's proposed Construction | KAT's Proposed Construction | Judge's Construction |
|---|---|---|---|
| "protective shelter" | no construction necessary, in the alternative "a structure intended to shield its occupants from exposure, injury, or damage" | "mobile above ground shelter intended to protect people from storms and wind-related injury" | no construction necessary |
| "multiple rails that extend along the first axis, are coupled to the enclosure, and support the protective shelter on a substrate" | no construction necessary, in the alternative "at least two straight structural members that each spread out from a central point, but not necessarily the same central point, and are in the same general plane each of which bear part of the weight of the protective shelter on a surface upon which the shelter can be placed" | "at least two rails that run parallel to the longer axis, are attached to the enclosed room, elevate the floor, and support the mobile above ground shelter on a substrate" | "multiple rails that run along the first axis of the protective shelter, but are not necessarily parallel to the first axis of the protective shelter, are coupled to the enclosure, and support the protective shelter on a substrate" |

| | | | |
|---|---|---|---|
| "first and second deck sections coupled to the rails" | no construction necessary, in the alternative "first and second roofless, platform like structures that are connected to the rails" | "first and second decks supported by the rails" | plain and ordinary meaning |
| "a ballast disposed in one or more locations in the protective shelter, including at least one location in a set including beneath the floor, in the first deck section, and in the second deck section" | no construction necessary, in the alternative "a ballast placed in one or more locations in a protective shelter including at least one location in a set including beneath the floor, in the first deck section, and in the second deck section" | "a ballast at one or more locations in a protective shelter including at least one location beneath at least one in a set including the floor, the first deck and the second deck" | plain and ordinary meaning |
| "multiple rails that elevate the floor above a substrate" | no construction necessary, in the alternative "at least two rails that lift the inside surface of the enclosure upon which people can stand above the object upon which | "at least two rails that elevate the floor of the enclosure above the substrate" | plain and ordinary meaning |

| | the protective shelter rest" | | |
|---|---|---|---|
| "multiple elongate members extending along the first axis that are coupled to the enclosure and support the protective shelter on a substrate" | no construction necessary, in the alternative "at least two structural members that are characterized by being long in relation to their width which each spread out from a central point, but not necessarily the same central point and are in the same general plane, each of which are attached to the enclosure and each of which bear part of the weight of the protective shelter on a surface upon which the shelter can be placed" | "at least two elongate members that run parallel to the longer axis, are attached to the enclosed room, elevate the floor, and support the protective shelter on a substrate" | "multiple elongate members that run along the first axis of the protective shelter, but are not necessarily parallel to the first axis of the protective shelter, are coupled to the enclosure, and support the protective shelter on a substrate" |
| "at least one location in a set" and "at least one of a set" | no construction necessary, in the alternative "including at least one of the listed | "including at least one of the listed locations or items in a set" | plain and ordinary meaning |

| | locations" | | |
|---|---|---|---|
| "including at least one location in a set including beneath the floor" | no construction necessary, in the alternative "including at least one of the listed locations. The listed locations include an option of beneath the floor" | "including beneath at least one of the listed locations or items in a set including beneath the floor" | plain and ordinary meaning |
| "wherein the ballast is disposed in both the first deck section and the second deck section" | no construction necessary, in the alternative "wherein the ballast is placed in both of the roofless, platform like structure" | "the ballast is located beneath both the first deck and the second deck" | plain and ordinary meaning |
| "the first and second deck sections are disposed at the first and second ends of the structure | no construction necessary, in the alternative "first and second decks placed at opposite ends of the enclosure" | "first and second decks located at opposite ends of the enclosure" | "first and second decks placed at opposite ends of the enclosure" |